Johnny REYNOLDS, et al., Plaintiffs,

v.

ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.

Civil Action No. 85–T–665–N.

United States District Court, M.D. Alabama, Northern Division.

Jan. 22, 1996.

Laurie Edelstein, Special Master, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City.

Winn S.L. Faulk, Special Master, Mobile, AL.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Johnny

Reynolds, Cecil Parker, Frank Reed, Ouida Maxwell, Peggy Vonsherie Allen, Jeffery W. Brown, Martha Ann Boleware.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Claudia H. Pearson, Longshore, Nakamura & Quinn, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Robert Johnson.

Florence Belser, Montgomery, AL, Pro Se.

Raymond P. Fitzpatrick, Jr., David P. Whiteside, Jr., Whiteside & Fitzpatrick, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams.

William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Gary Mack Roberts, James E. Folsom, Jr.

Bert S. Nettles, Lisa Wright Borden, London, Yancey, Elliott & Burgess, Birmingham, AL, William F. Gardner, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Halycon Vance Ballard, Department of Personnel, State of Alabama.

Bert S. Nettles, Lisa Wright Borden, London, Yancey, Elliott & Burgess, Birmingham, AL, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Jack Franklin Norton, Alabama Department of Transportation Legal Division, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Department of Transportation, State of Alabama.

**ORDER**

MYRON H. THOMPSON, Chief Judge.

This longstanding class-action lawsuit, which charged defendant Alabama Department of Transportation with employment discrimination based on race, is currently before the court on the department's motion, filed October 20, 1995, to correct a joint report of points of agreement and disagreement on a proposed backpay formula, filed earlier by the parties on August 28, 1995 (hereinafter August 28 report).[1] For the reasons that follow, the department's motion will be granted in part and denied in part.

## I. BACKGROUND

This lawsuit was initiated in May 1985. The plaintiffs charged that the defendants discriminated against them in employment because they are African–Americans. The plaintiffs represent a class of African–American merit and non-merit system employees and unsuccessful applicants. The defendants include the Alabama Department of Transportation, the Alabama State Personnel Department, and several state officials. The plaintiffs based this lawsuit on the following: Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983; and 42 U.S.C.A. § 1981. The jurisdiction of the court has been invoked pursuant to 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 2000e–5(f)(3).

In 1988, the parties reached a full settlement of this case, but the court refused to approve the proposed consent decree in the face of numerous objections from the members of the plaintiff class. *Reynolds v. King,* 790 F.Supp. 1101 (M.D.Ala.1990). In 1993, after a partial trial, the parties reached a second, albeit only partial, settlement, subsequently embodied in three consent decrees. In the wake of this new settlement, the court allowed a group of non-class members—consisting mostly of white employees of the department and now commonly referred to as

---

1. Doc. no. 727.

the "Adams intervenors"—to intervene and challenge any race-conscious provisions in the settlement. *Reynolds v. Roberts,* 846 F.Supp. 948 (M.D.Ala.1994). One of the consent decrees was approved by the court on March 16, 1994.[2] The two others are currently under the court's consideration.

Since the approval of the first consent decree, the parties have attempted to settle the remaining issues in this case, including how to calculate backpay for class members. As part of their effort to agree on a formula for calculating backpay, the attorneys and experts for the plaintiffs and the department met on August 28, 1995, and after the meeting submitted the August 28 report. Within the report is a description of a proposed formula for calculating the salary a class member would expect to earn in the absence of discrimination, and an example of how that formula would be used to calculate backpay. In relevant part, the August 28 report reads as follows:

> "Assume that years of service ("S"), years of education ("E") and race ("R") resulted in the following equation where race is a significant factor:
>
> *Expected salary = $9000 + 200 × S + 300 × E − 1000 × R*

This indicates a base salary of $9,000 with an additional $200 for each year of service and $300 for each year of college education as determined by multiple regression of such factors and that African–Americans with comparable service and education earn $1,000 less than their white counterparts. With these assumptions, the formula set forth above would compute expected earnings for a class member having 2 years of service ("S") and 4 years of education ("E") as follows:

> *Expected Salary = $9000 + 200 × 2 + 300 × 4 + 1000 (for a total of $11,600 in expected earnings if there had been no racial discrimination)*

This analysis will be performed for each year of the liability period. Backpay for this class member would be the foregoing Expected Salary of $11,600 minus his actual pay salary for the same time period with interest for the difference computed at NLRB–IRS interest rates compounded quarterly." [3]

The department contends that the second equation contains an error in that it adds the race coefficient—$1,000—rather than subtracts it. The plaintiffs contend that the proposed formula should not be changed because the addition of the race coefficient was a concession by the department, not a mistake. The effect of adding the race coefficient, as shown in the second equation, is to account for the effect of race on each class member twice. If the base salary—$9,000 in each equation—is calculated using only the salaries of whites, then the added increment of pay that whites received simply for being white—known as the race coefficient—is already included in the base salary. If the race coefficient is then added to the expected salary, the result is that the race coefficient is included twice, the first time in the base salary term and the second time when the race coefficient is added to the equation. Therefore, the expected salary would compensate each class member twice for the discrimination he or she suffered because of race.

The plaintiffs respond with two arguments. First, they assert that to subtract the race coefficient would be unjust and illogical; its application would result in each class member who had arguably suffered because of his or her race being paid $1,000 less than similarly situated whites. The plaintiffs further argue that the addition of the race coefficient to each class member's expected salary was part of a bargain in which they made two concessions: they agreed to use an equation that includes race as a factor, and they agreed to use both whites and blacks in the database to calculate base salary.[4] According to the plaintiffs, when the department's expert proposed an equation that included race as a factor, and included both blacks and

---

**2.** Doc. no. 553. *Reynolds v. Alabama Dept. of Trans.,* 1994 WL 899259 (M.D.Ala.1994).

**3.** August 28 report, filed on August 28 (Doc. no. 727), 1995, at 3.

**4.** Transcript of September 14, 1995, hearing at 90–92 (testimony of Dr. Edwin L. Bradley).

whites in the database—both of which the plaintiffs had argued against—but also *added* the race coefficient to the expected salary, they agreed to it because they thought it would result in higher awards for class members.[5] The plaintiffs do not say that this tradeoff was explicit. Rather, they decided not to pursue their other two objectives as long as the race coefficient was added to the expected salary.[6] The department denies that there was any compromise. It contends that the double counting of race is a simple error and is in conflict with the description of the formula contained elsewhere in the report.[7]

## II. DISCUSSION

The Department of Transportation contends that the report must be corrected for three reasons: (1) the mathematical equation contains a mistake, that is, the equation as written is not the equation to which the department agreed; (2) there is a contradiction between the language of the report and the mathematical equation; and (3) it would be inequitable to enforce the report as it currently exists. The plaintiffs argue that because the report accurately reflects the parties' agreement, there is no ground for changing it.

 *Whether the addition of the race coefficient is a mistake.* The Department of Transportation contends that the addition of the race coefficient in the second equation is a simple mistake and that a minus sign was inadvertently transposed into a plus sign. The plaintiffs contend that the addition of the race coefficient was intentional and was part of a compromise. In contract law, a mistake is "a belief that is not in accord with the facts." Restatement (Second) of Contracts § 151 (1981). This includes an "erroneous belief as to the contents … of a writing." *Id.*, cmt. a. When considering whether the contract contains a mistake, the court is not concerned with whether the contract is illogical, or imprudent, or with whether the par-

ties fully understood all of the ramifications of what they had agreed to. The court is merely concerned with whether the parties signed a document that, unbeknownst to them, or either of them, did not express the agreement they had reached.

In this case, the addition of the race coefficient in the second equation does not appear to be a mistake for several reasons. First, it is unlikely that the department believed when it signed the August 28 report that the second equation contained a minus sign because the equation in which the alleged mistake exists is solved and the addition is complete and correct. If the result of the equation had been given as $9,600, rather than $11,600, it would be plausible that the department thought that the sign before the $1000 term was a minus. Not only does the sign appear as a plus, the result of the equation, which is given twice, reflects that the $1000 term was added to the rest of the equation. Further, the parties discussed this very equation throughout their negotiations on August 28, 1995. According to the plaintiffs, when the department's expert proposed a formula that included race as a factor, and included blacks and whites in the database, but also added the race factor twice, they agreed to it because it would result in higher awards for class members.[8] Also, the department's attorney and expert both signed the report. Thus, at the end of the August 28 negotiations, the department was fully aware of the contents of the report.

Further, the August 28 report contained a provision which gave the parties from Monday, August 28, through Friday, September 1, to review the report and back out of it if they wished. The department did not indicate in any way during this time that it had any reservations about the report. Indeed, on Friday, September 1, 1995, in a teleconference with counsel for the plaintiffs and the department, the court told the parties that it was confused by the fact that the first equation subtracted the race coefficient while the

5. Transcript of September 14, 1995, hearing at 102.

6. Transcript of September 14, 1995, hearing at 86 (testimony of Dr. Edwin L. Bradley).

7. Transcript of September 14, 1995, hearing at 162.

8. Transcript of September 14, 1995, hearing at 102.

second equation added the race coefficient, and asked counsel for the department directly if the second equation was correct. The department's counsel assured the court that both equations were correct and noted particularly that the parties intended for the sign to switch from a minus in the first equation to a plus in the second equation. Thus, not only did the August 28 report provide the parties with time to review the report on their own before being bound, but the court itself directed the department's attention to the very equation now at issue and asked it whether it intended for the equation to read as it did. Of course the fact that the parties had the opportunity to review the report does not establish that the report is free from mistakes. However, the fact that counsel for the department told the court directly that the equation at issue said what the department wanted it to say indicates that the equation was not a mistake.

 *Whether the language of the report is conflicting and ambiguous.* The Department of Transportation contends that there is an irreconcilable contradiction in the August 28 report because the first equation shows the race coefficient being subtracted when calculating expected salary, and the second equation shows the race coefficient being added. The department contends that if two clauses of a contract are contradictory, the court must give effect to the earlier clause and reject the later clause. However, contract law requires more than a simple choice between two clauses. When faced with two apparently inconsistent clauses in a contract, the court should first attempt to reconcile the two clauses. If it is impossible to reconcile the two provisions, the court should strive to "carry out the purpose and intention of the parties." Arthur L. Corbin, Corbin on Contracts § 547 (1960); *see also* 17A C.J.S. Contracts § 309 (1963). Thus, the court must first consider whether the two clauses can be reconciled, and if they cannot, it must consider how best to carry out the intention of the parties. There is no contradiction if the two clauses can be reconciled or if the later clause clearly intends to modify the earlier clause. *City of Fairhope v. Town of Daphne,* 282 Ala. 51, 208 So.2d 917, 924 (1968) (citing *Lowery v. May,* 213 Ala. 66,

104 So. 5 (1925)); *Epperson v. Stacey,* 266 Ala. 396, 96 So.2d 750 (1957).

 Another way to view a irreconcilable contradiction in the language of a contract is to say that the contract is ambiguous. "A contract term is ambiguous if [it is] 'reasonably susceptible to more than one interpretation....'" *Orkin Exterminating Co., Inc. v. F.T.C.,* 849 F.2d 1354, 1360 (11th Cir.1988) (quoting *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.,* 684 F.2d 776, 780 (11th Cir.1982)), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). To determine whether a writing is ambiguous, the court must first assess the plain meaning of the language of the writing and determine whether there are two possible reasonable interpretations. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1382 (11th Cir.1993). If so, as in the case of an irreconcilable conflict, the court must strive to give effect to the intention of the parties. *Charles H. McCauley Assoc. v. Snook,* 339 So.2d 1011, 1015 (Ala.1976).

 To determine the intention of the parties, the court must look to the entire contract. Thus, the court must strike a delicate balance: it cannot write an entirely new contract for the parties, but it must give effect to the parties' intentions. While attempting to do this, the court must take care to avoid "unconscionable results." *Id.*

Based on the court's review of the August 28 report, it appears that the two equations at issue cannot logically be reconciled. As explained above, the two equations purport to calculate the same thing, but they use different methods and produce different results. Because the August 28 report does not explain how the various equations are to be used together, the report is susceptible to at least two different facial interpretations: that the parties intended that each class member receive $1,000 more than similarly situated whites, or that they intended that each class member receive $1,000 less than similarly situated whites. The result of the contradiction between the two equations is that the August 28 report is ambiguous.

In this case, it is evident that the intention of the parties was to devise an equation that would calculate the pay that would be expected in the absence of discrimination. This is clear from the August 28 report itself, from the reports each party has submitted explaining the August 28 report, from the pleadings submitted regarding the motion to correct the report, and from the statements of the parties at the September 14–15 hearing. In both equations in the August 28 report, the term "Expected salary" is used. Because the report then provides that "Back-pay for [a] class member would be the foregoing Expected Salary ... minus his actual pay salary for the same time period with interest," the only reasonable reading of the term "Expected salary" is the salary a person would earn in the absence of discrimination. . Indeed, in the language that immediately follows the second equation, "Expected salary" is said to "equal" "expected earnings if there had been no racial discrimination." [9]

Consistent with this interpretation, in its report explaining the August 28 report, the department wrote that the goal of the proposed equation was to "determine what the class member's earnings would be in the absence of discrimination." [10] Similarly, in their report explaining the August 28 report, the plaintiffs indicate that the formula would be used to "determine economic losses of the individual class members" due to racial discrimination,[11] in other words, the difference between what a class member would have earned in the absence of discrimination and what he or she actually earned. In its motion to correct the August 28 report, the department wrote that the purpose of the equation is to calculate the expected earnings of class members "in the absence of discrimination." [12] At the September hearing, the plaintiffs' expert testified that "expected sal-

ary" should be equal to "the amount [a class member] would make, absent racial discrimination." [13] The department's expert testified that the goal was "to devise a tool, or a method that captures the unequal treatment of equals." [14] Thus, it is clear that when they created the equations in the August 28 report, the parties intended to come up with a way to determine what a class member would have earned in the absence of discrimination.

Neither equation in the August 28 report accomplishes this goal. The department would have the court apply an equation which first calculates what a class member would have earned had he or she been a white person with the same job-related attributes—the salary one would expect in the absence of discrimination—and then subtracts the race coefficient from this amount. The plaintiffs would have the court apply an equation which calculates what a class member would have earned had he or she been a white person with the same job-related attributes—the salary one would expect in the absence of discrimination—and then adds the race coefficient to this amount. Because the race coefficient is included in the base salary and then added again to the expected salary, the final expected salary includes the race coefficient twice. The result is that each class member would be compensated twice for the discrimination he or she suffered. Because neither of these readings of the second equation will accomplish the parties' stated goal of calculating what a class member would have actually earned in the absence of discrimination, the court must come up with a reading that will accomplish this goal.

The equation that will best accomplish the parties' intentions and resolve the ambiguity in the August 28 report would be one that combines both the first and second

9. August 28 report, filed on August 28, 1995 (Doc. no. 727), at 3.

10. Report of defendant on operation of proposed class-wide formula, filed September 11, 1995 (Doc. no. 739), at 2.

11. Plaintiffs' explanation of agreed upon remedial formula, filed September 11, 1995 (Doc. no. 743), at ¶ 2.

12. Defendant Department of Transportation's motion to correct parties' report dated August 28, 1995, filed October 20, 1995 (Doc. no. 786), at 6.

13. Transcript of September 14, 1995, hearing at 84 (testimony of Dr. Edwin L. Bradley, Jr.).

14. Transcript of September 14, 1995, hearing at 108 (testimony of Dr. Ephraim Asher).

equations, with the result that the race coefficient is canceled out or eliminated. It is as follows:

*Expected salary* $= B + 200 \times$ *years of service* $+ 300 \times$ *years of education*

In this equation, B is equal to the base salary calculated using only whites in the database. The analysis determined that each year of service contributed $200 to the final salary and each year of education contributed $300. Again, these values were calculated using only whites in the database. The "years of service" and "years of education" terms are used as examples of the kinds of factors that might eventually go into the equation. The court should not be understood to have decided the actual components of the equation; it has not. Rather, the court is demonstrating the construction of the equation. Because the race coefficient is already contained in B, it is neither added nor subtracted. The equation constructed by the court accomplishes the goals of the parties because it will calculate what a class member would have earned in the absence of discrimination.[15] Because the department did not discriminate against white employees, only the salaries of whites will be used to calculate the base salary and the values of each term of the equation.[16]

*Whether enforcing the report as written would be inequitable.* The Department of Transportation contends that equity requires that the August 28 report be modified. It contends that the plaintiffs' refusal to allow it to modify the report while the plaintiffs have sought to modify it in other ways amounts to bad faith. This argument is without merit. The plaintiffs have sought the best possible settlement for their clients and have attempted to hold the department to an agreement that, on its face, would greatly benefit the plaintiff class. Without more, this is not bad faith. Further, the plaintiffs have not filed a motion to modify the report; they have urged the court to interpret the report in ways favorable to them.

The department further contends that double counting of the racial coefficient in the calculation of backpay would result in "undue hardship" on the department and an "enormous windfall" to plaintiff class members.[17] The Adams intervenors have also registered their opposition to the second equation contained in the August 28 report, contending that if the equation is applied as the plaintiffs suggest, the result could undermine the financial viability of the department.[18] They contend that there are approximately 100,000 class members who would receive awards ranging from $20,000 to $50,000 each. These contentions essentially amount to an argument that the application of the equation would be unconscionable and contrary to public policy. Because the court has resolved the issue on other grounds, it does not reach this argument. Related to this is the possibility that the backpay formula might be used to place class members in jobs. If each class member's expected salary includes the race coefficient twice, and job placement is based on expected salary, class members could end up being placed in jobs that they do not deserve. Again, because the court

15. Indeed, the plaintiffs' expert maintains that this formulation would best calculate what a class member would have received in the absence of racial discrimination. Transcript of September 14, 1995, hearing at 101–102 (testimony of Dr. Edwin L. Bradley, Jr.).

16. The department's expert seems to suggest an interpretation of the formula that would accomplish this goal. He suggests that the race coefficient should first be subtracted from the expected salary, to obtain the expected black salary. Then the race coefficient should be added back in, to obtain the expected salary in the absence of discrimination. While this approach might accomplish the goal of calculating the expected salary in the absence of discrimination, it is not included in the August 28 report. Rather, it is in

a declaration filed as exhibit A to the department's reply to the plaintiffs' response to the motion to correct the August 28 report, filed November 17, 1995 (Doc. no. 828). In addition, this approach is circular. First the race coefficient is added, then it is subtracted. The court's equation accomplishes the parties' intentions without the extra steps.

17. Defendant Department of Transportation's motion to correct parties' report dated August 28, 1995, filed October 20, 1995 (Doc. no. 786), at 10.

18. Adams intervenors' opposition to plaintiffs' proposal to use a formula to award relief under article 20 of consent decree I, filed January 9, 1996 (Doc. no. 885).

has resolved the issue on other grounds, it does not reach this argument.

Accordingly, for the foregoing reasons, it is ORDERED as follows:

(1) Defendant Alabama Department of Transportation's motion, filed October 20, 1995 (Doc. no. 786), to correct a joint report of points of agreement and disagreement on the proposed backpay formula, is granted to the extent that the following equation to calculate the salary expected in the absence of discrimination shall apply:

$Expected \quad salary = B + 200 \times years \quad of \quad service + 300 \times years \; of \; education$

(2) The motion is denied in all other respects.