Johnny REYNOLDS, et al., Plaintiffs,

v.

ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.

Civil Action No. 85–T–665–N.

District Court of United States, M.D. Alabama, Northern Division.

Jan. 21, 1997.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Abigail P. van Alstyne, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Johnny Reynolds, Cecil Parker, Robert Johnson, Frank Reed, Onida Maxwell, Martha Ann Boleware, Peggy Vonsherie Allen.

Abigail P. van Alstyne, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Florence Belser.

Florence Belser, Montgomery, AL, pro se.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams.

Thomas R. Elliott, Jr., Allen R. Trippeer, Jr., C. Dennis Hughes, Stephen L. Scott, London & Yancey, Birmingham, AL, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, William H. Pryor, Jr., Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Jimmy Butts, Halycon Vance Ballard, Department of Transportation, State of Alabama, Department of Personnel, State of Alabama, Fob James.

### MEMORANDUM OPINION AND ORDER

MYRON H. THOMPSON, Chief Judge.

By order entered on November 7, 1996, the court held that plaintiff class members who "worked or applied" in the non-licensed engineer line of progression, but were never

**1.** Doc. no. 1319.

classified in that line, should not be included in the non-licensed engineers' cohort group for purposes of the backpay eligibility formula.[1] The court promised that a memorandum opinion would follow later. This is the promised opinion, giving the reasons for the November 7 order and setting up further procedures for the determination of backpay for the members of the plaintiff class excluded from that cohort by that order, but who still might be entitled to backpay as members of the cohort.

### I.

The relevant and salient events leading up to the submission of this issue are as follows:

● *May 1985:* This lawsuit was filed. The plaintiffs charged the defendants with employment discrimination based on race in the Alabama Department of Transportation. The plaintiffs are African–Americans, and they represent a class of African–American merit and non-merit system employees and unsuccessful applicants. The defendants include the Alabama Department of Transportation, the Alabama State Personnel Department, and several state officials. The plaintiffs base this lawsuit on the following: Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983; and 42 U.S.C.A. § 1981. The jurisdiction of the court has been invoked pursuant to 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 2000e–5(f)(3).

● *October 8, 1986:* The court entered an order certifying a plaintiff class as follows: (1) all black merit system employees employed by the Transportation Department at any time since May 21, 1979; (2) all black non-merit system employees of the depart-

ment who have unsuccessfully sought employment as merit system employees with the department at any time since May 21, 1979; and (3) all black non-employees who have unsuccessfully sought employment as merit system employees with the department at any time since May 21, 1979.[2] Subclasses (1) and (2) therefore consist of *employees* of the department and subclass (3) consists on *non-employees.*

● *1993:* The parties reached a partial settlement, subsequently embodied in three consent decrees.

● *March 16, 1994:* The court approved one of the consent decrees, now known as consent decree I.[3] Consent decree I reaffirmed the certification of a plaintiff class, with subclasses, as set forth in the order of October 8, 1986. The two other proposed consent decrees are currently under the court's consideration.

● *August 28, 1995:* After the approval of consent decree I, the parties attempted to settle the remaining issues in this case, including how to calculate eligibility for and the amount of backpay for class members. These negotiations took place pursuant to article XX of consent decree I. As part of their effort to agree on a formula for calculating backpay, the attorneys and experts for the plaintiffs and the Department of Transportation submitted on August 28, 1995, what is now called the "August 28 report." The report, for purposes of discussion here, consists of essentially two formulas: one for the determination of "eligibility" of class members for backpay (the eligibility formula); and another for the calculation of the "amount" of backpay for class members (the amount-of-backpay formula).[4] The eligibility formula is relevant to the issue now before the court and is, in part, as follows:

"Pursuant to prior Orders of the Court, the parties have met and discussed the points of agreement and disagreement between them on the formula for resolving

further remedies under Article Twenty of Consent Decree I. The parties agree to the following:

1. Backpay for class members who have been employed by the Alabama Department of Transportation (formerly the Alabama Highway Department)[1] will be determined by a multiple regression formula constructed as follows:

a. Class members will be categorized into cohort groups within line of progression or job families in which they worked or applied."

The footnote, number one, provided that: "The parties have not yet agreed as to whether other remedial issues can be resolved through the agreed-upon formula, but are continuing to discuss this issue."[5]

The amount-of-backpay formula provided in part as follows:

"Assume that years of service ("S"), years of education ("E") and race ("R") resulted in the following equation where race is a significant factor:

$$Expected\ salary = \$9000 + 200 \times S + 300 \times E - 1000 \times R$$

This indicates a base salary of $9,000 with an additional $200 for each year of service and $300 for each year of college education as determined by multiple regression of such factors and that African–Americans with comparable service and education earn $1,000 less than their white counterparts. With these assumptions, the formula set forth above would compute expected earnings for a class member having 2 years of service ("S") and 4 years of education ("E") as follows:

$$Expected\ Salary = \$9000 + 200 \times 2 + 300 \times 4 + 1000\ (for\ a\ total\ of\ \$11,600\ in\ expected\ earnings\ if\ there\ had\ been\ no\ racial\ discrimination)$$

This analysis will be performed for each year of the liability period. Backpay for this class member would be the foregoing

---

2. Doc. no. 82.

3. 1994 WL 899259 (M.D.Ala.1994); Doc. no. 553.

4. Doc. no. 727.

5. *Id.*

Expected Salary of $11,600 minus his actual pay salary for the same time period with interest for the difference computed at NLRB–IRS interest rates compounded quarterly."[6]

● *September 11, 1995:* The plaintiffs and the Transportation Department submitted a "joint report," signed by counsel for both sides, stating that, "the parties have determined the issues related to implementation of Article Twenty that they have resolved by agreement and those that must be resolved by the Court at the hearing scheduled for September 14, 1995."[7] With the joint report, therefore, the parties set forth two separate points of agreement: first, that "they have determined the issues related to implementation of Article Twenty that they have resolved by agreement"; and, second, that they "have determined the issues ... that must be resolved by the Court."

In accordance with the first point of agreement, the parties stated that "The multiple regression formula agreed upon by the parties is set forth in the Report of Points of Agreement and Disagreement Regarding Formula for Determination under Article Twenty of Consent Decree I," that is, the August 28 report.[8] With regard to the second point of agreement, they then listed the following six items for "resolution" by the court:

"The parties have agreed that the Court must determine the following issues that have not yet been agreed upon:

1. Should the remedial formula that the parties agreed upon in the Joint Report of August 28, 1995, be restricted to the job families that satisfy a test of statistical significance, or should some other threshold standard be adopted? If a strict test of statistical significance is to be adopted, what probability level should be adopted

and should it be determined by a one-tailed or two-tailed test?

2. May class members dissatisfied with the results of the formula opt-out for an individualized trial and, if so, under what conditions?

3. Should the Court adopt the adjustment proposed by the [Transportation Department] for the effects of pre–1979 disparities in footnote 2 of the Joint Report of August 28, 1992?

4. Should the multiple regression formula be extended to the non-employee class members and, if so, what modifications may be necessary to do so? If not, what method of determining remedies should be adopted under Article Twenty of Consent Decree for non-employee class members?

5. Should constructive employment service histories and expected current job classifications be determined by reference to the job classification in the applicable job family that corresponds to the salary level in the salary range established by the State Personnel Department? If not, what method of determining job awards and constructive service histories should be adopted?

6. Should the back-pay awarded to each class member be adjusted upward to compensate for increased tax-rates or tax obligations from receiving such pay in a lump sum in 1995 rather than in bi-weekly installments during the period from 1979 through 1994?"[9]

The "worked or applied" language in the eligibility formula was not one of the issues the parties marked as still unresolved and thus left for later determination.

● *September 14 and 15, 1995:* A hearing was held on some of the issues, identified in the September 11 joint report, for resolution by the court.[10] At the hearing, the parties reaffirmed to the court the following: first, that the eligibility and amount-of-backpay formulas were binding on them; second, that the issues listed in the September 11 joint

---

6. *Id.*

7. Doc. no. 740 at 1.

8. *Id.*

9. *Id.* at 1–2.

10. The parties agreed that some of the issues in the September 11 joint report were not yet ready

report, if not resolved by the parties, were to be resolved by the court, with the court's resolutions binding on the parties and subject only to appellate review (assuming that appellate review is allowable under the formulas and consent decree I, an issue with which the plaintiffs took issue); and, third, that footnote one reserved for resolution "other remedial issues." The defendants also raised the new contention that the amount-of-backpay formula contained an "unintentional error," and they asked that the court modify the amount-of-backpay formula to correct the error. Part of the exchange among the court, Ms. Borden (the defendants' attorney), and Mr. Wiggins (the plaintiffs' attorney) was as follows:

"THE COURT: This is not a fairness hearing. If this were a fairness hearing, that would be a different story. If you're telling me that I'm not supposed to resolve this, and it's all a question of either we have an agreement or we don't have an agreement, then I'm really wasting my time until you come forward with the formula.

\* \* \* \* \* \*

If these aren't to be determined by the Court, why did you sign them off as to be determined by the Court?

"MS. BORDEN: Judge, what I'm saying is that we were willing to agree that the Court should resolve these issues, but this seems to be turning into the resolution of an issue that we thought was already taken care of.

"THE COURT: I see. Okay. So you're saying this issue about the equation is something that you thought you already had resolved?

"MS. BORDEN: Yes, sir. And the Department doesn't seek to take that back in any sense other than that the Department sought to correct an error in the calcula-

tion, which the Court itself caught this morning.

"MR. WIGGINS: It was an agreed upon compromise, your Honor, it was not an error.

"THE COURT: Just a minute. Just a minute. Let me get this—I don't want to revisit this issue anymore. When you filed this joint report regarding issues to be determined by the Court on the back pay formula, both sides agreed that the report that was with the Court was an agreed upon formula. And the Court was to resolve the matters set forth on pages one and two, really, of document number 740, that is the joint report. So I was to resolve these issues.

"MS. BORDEN: Yes, sir.

\* \* \* \* \* \*

"THE COURT: I want to make sure. When you stood up, I was getting a different message. I thought you were telling me I wasn't supposed to be resolving any of the formula issues. And until you presented a formula package to me, you had nothing binding between you. And I want to make sure that you do have something binding between you, and that is your joint report. And you've left it up to the Court to resolve these other issues, is that correct?

"MS. BORDEN: It's generally correct, Judge, except that in the joint report that was submitted to you, the points of agreement and disagreement, for one thing there were various areas of disagreement, and those areas were intended to be submitted to the Court for resolution. And I'm in agreement that the points of agreement that are set forth in there were points that we did agree upon.

\* \* \* \* \* \*

"THE COURT: ... Okay. Let me make sure now. Let me say—Do you have an agreement with the plaintiff class, defendants do, that the agreement, the formula that was filed with the Court is binding on both parties, and the things that are set out in the joint report are to be resolved by this Court and subject to review, and

for submission to the court for resolution. Transcript of hearing held on September 14–15, 1996,

at 426–28.

.

subject to the Court being limited by the operation of law?

"MS. BORDEN: Yes. And again, subject to the error that we pointed out." [11]

Again, however, throughout this exchange and the rest of the proceedings, the defendants did not once mention, or otherwise indicate, that the "worked or applied" language in the eligibility formula was one of the issues reserved for later resolution by either footnote one or the September 11 joint report.

● *October 20, 1995:* The defendants filed a formal motion requesting that the amount-of-backpay formula be corrected as suggested at the September 14–15 hearing.[12]

● *November 30, 1995:* The court entered an order, pursuant to Fed.R.Evid. 706(a), appointing Mr. Ben Fine, an attorney and professor of mathematics, to serve as an expert witness as to mathematical and statistical issues in this litigation.[13]

● *January 22, 1996:* The court entered an order modifying the amount-of-backpay formula as suggested by the defendants.[14] The defendants contended that "that the second equation contains an error in that it adds the race coefficient—$1,000—rather than subtracts it." [15] As the court then explained, "The effect of adding the race coefficient, as shown in the second equation, is to account for the effect of race on each class member twice. If the base salary—$9,000 in each equation—is calculated using only the salaries of whites, then the added increment of pay that whites received simply for being white—known as the race coefficient—is already included in the base salary. If the race coefficient is then added to the expected

salary, the result is that the race coefficient is included twice, the first time in the base salary term and the second time when the race coefficient is added to the equation. Therefore, the expected salary would compensate each class member twice for the discrimination he or she suffered because of race." [16] The plaintiffs contended that "the proposed formula should not be changed because the addition of the race coefficient was a concession by the department, not a mistake." [17]

Relying on what the court perceived to be the intent of the parties as argued by the Transportation Department, the court *modified* the formula as follows to conform to what the defendants wanted:

"*Expected salary = B + 200 × years of service + 300 × years of education.*" [18]

● *May 13, 14, and 15, 1996:* The court held another hearing on a number of issues regarding the backpay formulas for eligibility and amount-of-backpay.

● *May 16, 1996:* After the May 13–15 hearing, the court entered a summary order of its general findings and conclusions for determining eligibility for and the amount of backpay for all class members covered by the August 28 report.[19] The court promised that an extended memorandum opinion would come later.[20]

On that same day, the court issued another order setting a hearing for May 21, 1996, as to, first, "whether the use of appraisal scores in the multiple regression analysis violates any of the three requirements for a valid regression factor listed in ¶ 1(c) of the August 28 report," and, second, "any other factor which any party contends should be included in the multiple regression analysis." [21] The court added that, "Any party seeking to

11. *Id.* at 154–60.

12. Doc. no. 786.

13. Doc. no. 845.

14. Doc. no. 896; 926 F.Supp. 1077 (M.D.Ala. 1996).

15. *Id.* at 1080.

16. *Id.*

17. *Id.*

18. *Id.* at 1085.

19. Doc. no 1023.

20. *Id.*

21. Doc. No. 1024.

include any factor other than education, years of seniority, and appraisal scores in the multiple regression analysis must submit its briefs and evidentiary materials regarding such factor(s) pursuant to the schedule outlined in the May 15 order."[22]

In that same order, based on the findings and conclusions in the general order, the court held that, at the May 21 hearing it would also make specific determinations regarding the non-licensed engineer line of progression. The court stated that it would "determine whether the non-licensed engineer line of progression is eligible for backpay, and if so, by what formula backpay will be calculated. In other words, the court will make the following determinations for this line of progression: (a) whether the entire line of progression should constitute a cohort or whether it should be subdivided in some manner into smaller cohorts; (b) whether the cohort (or cohorts) within the line of progression suffered discrimination as a cohort, in other words, whether the cohort (or cohorts) is eligible for the backpay equation; and (c) what factors should be included in the multiple regression analysis."[23] The court concluded that "It is the intent of the court that any concern regarding the non-licensed engineer line of progression be raised at the May 21 hearing so that the eligibility and backpay formulas can be applied to this line forthwith. *In other words, as to non-licensed engineers, speak now or forever hold your peace.*"[24]

● *May 21 and 22, 1996:* The court held a hearing regarding the issues listed in its May 16 orders.

● *May 28, 1996:* The court entered an order, based on the evidence presented at the May 21–22 hearing, summarizing its findings as to the non-licensed engineer line of progression.[25] The court again promised that an extended memorandum opinion would come later.[26] The court concluded

that "the parties shall jointly file by ... May 31, 1996, the results of the eligibility formula and backpay equation for the non-licensed engineer line of progression."[27]

● *May 31, 1996:* The parties filed a joint report under seal of the results of the application of the eligibility and backpay formulas to the non-licensed engineer line of progression.[28]

● *June 3, 1996:* The defendants filed a brief arguing that, under the August 28 report, plaintiff class members who "worked or applied" in the non-licensed engineer line of progression, but were never classified in that line of progression, should not be included in the non-licensed engineers' cohort group for purposes of the eligibility formula.[29]

A conference call was held with counsel for parties regarding application of the eligibility formula to employees who, in the language of the formula, "worked or applied" within a line of progression but were not classified in that line.

● *June 4, 1996:* The plaintiffs responded and filed a brief on the worked-or-applied issue.[30]

● *June 10, 1996:* A conference call was held regarding the determination of backpay under the August 28 report for the remaining lines of progression.

● *June 11, 1996:* The court entered an order setting the following issues for submission on July 5, 1996: "(1) whether there are class members missing from the database; (2) whether the database contains incomplete or inaccurate information regarding years of service and years of education for some class members; (3) whether backpay should be calculated for the period since December 31, 1995; (4) whether the Graduate Civil Engineer and other non-licensed engineer lines of progression should be included in another cohort group; (5) *whether class members*

---

22. *Id.*

23. *Id.*

24. *Id.* (emphasis added).

25. Doc. no. 1042.

26. *Id.*

27. *Id.*

28. Doc. no. 1048.

29. Doc. no. 1054.

30. Doc. no. 1055.

who "worked or applied" in the non-licensed engineer line of progression, but were never classified within that line of progression, should be included in the non-licensed engineers cohort group for the purposes of the backpay and eligibility formulas; and (6) whether backpay should be calculated for class members who have less than one year of service." [31]

● October 14, 1996: The plaintiffs and the defendants filed supplemental briefs addressing the worked-or-applied language in the August 28 report.[32]

● October 16, 1996: The court entered an order explaining and holding that, under the August 28 report, backpay for the non-licensed engineer line of progression should not exclude calculations for plaintiff class members who have less than one year of service.[33]

● October 23, 1996: The court entered an order explaining and holding that, under the August 28 report, backpay for the non-licensed engineer line of progression should extend through 28 days before the date of distribution of backpay and need not be repeated.[34]

● November 7, 1996: The court entered an order holding that, under the August 28 report, class members who "worked or applied" in the non-licensed engineer line of progression, but were never classified in that line of progression, should not be included in the non-licensed engineers's cohort group for purposes of the eligibility formula. The court indicated that a memorandum opinion would follow later.[35]

● November 22, 1996: The court entered an order explaining and holding that, under the August 28 report, backpay for the non-licensed engineer line of progression should not include an accounting for possible in-

creased tax consequences to members of the plaintiff class.[36]

● November 25, 1996: The court entered order requiring that the Department of Transportation submit to the court, by December 31, 1996, a final report for backpay for the non-licensed engineer line of progression.[37]

● December 5, 1996: The court entered an order modifying the October 23 order to read that, under the August 28 report, the backpay for the non-licensed engineer line of progression should extend through 60 days before the date of distribution of backpay and need not be repeated.[38]

The court also entered an order requiring the Department of Transportation to submit to the court, by December 31, 1996, a final report for backpay for the following lines of progression: highway maintenance technician/laborer; clerical; accounting; audit; data; electronic; equipment; HMT-specialty; licensed engineers; right of way; and trades.[39] The report should reflect backpay as of December 6, 1996.

● December 31, 1996: The Transportation Department filed a final report for backpay for the following lines of progression: non-licensed engineer; highway maintenance technician/laborer; clerical; accounting; audit; data; electronic; equipment; HMT-specialty; licensed engineers; right of way; and trades.[40]

● January 3, 1997: The plaintiffs filed several objections to the December 31 final report.[41]

The court entered an order stating that "the class-wide formulas contained in the August 28, 1995 report ... apply, in the language of the report, to plaintiff 'class members who have been employed by the Ala-

---

31. Doc. no. 1072 (emphasis added).

32. Doc. nos. 1287 and 1292.

33. Doc. no. 1296.

34. Doc. no. 1307.

35. Doc. no. 1319.

36. Doc. no. 1338.

37. Doc. no. 1347.

38. Doc. no. 1404.

39. Doc. no. 1403.

40. Doc. no. 1453.

41. Doc. no. 1468.

bama Department of Transportation' and does not allow for opt-out by those class members." [42]

The court also entered an order adopting the following recommendation of Court–Appointed Expert Fine: "that the use of a multiple regression equation to calculate backpay is appropriate where the cohort numbers at least 8" and that "[f]or smaller cohorts, ... data from different years [should be combined] within a line of progression until the pool contains at least 12 data points." [43] The court required that the defendants and the plaintiffs file a supplemental backpay report reflecting these additions. [44]

The court entered another order adopting the recommendation of Court–Appointed Expert Fine for the redistribution of backpay among class members. [45] The court explained that "Mr. Fine proposes the use of a redistribution formula which he postulates captures as well as possible the nature and extent of the losses suffered by individual class members, and which has no inherent statistical biases toward any segment of the class. Moreover, the formula represents a true compromise between the positions advanced by the parties." [46] The court required that the parties file a supplemental backpay report reflecting the redistribution. [47]

● *January 6, 1997:* A conference call was held on the plaintiffs' January 3 objections to the defendants' December 31 final report.

● *January 7, 1997:* The court entered an order sustaining all but one of the plaintiffs' January 3 objections. [48] The court required that the defendants file a corrected final backpay report by January 14, 1997. [49]

● *January 14, 1997:* The defendants filed a corrected final backpay report for the lines

of progression at issue in the December 31 report. [50]

## II.

■ As stated, the defendants argued that, under the August 28 report, plaintiff class members who "worked or applied" in the non-licensed engineer line of progression, but were never classified in that line of progression, should not be included in the non-licensed engineers's cohort group for purposes of the backpay eligibility formula. [51] On November 7, 1996, the court entered an order concluding, without explanation, that these class members should be excluded from that cohort in the December 31 calculations, and the court promised that a memorandum opinion would follow later. [52]

With a perspective limited to the language of the four corners of the August 28 report, the court must admit that the plaintiffs have the better argument, which, succinctly put, appears to be as follows

(1) The class certified by the court broadly includes two groups: *employees* and *non-employees.*

(2) The August 28 report expressly states that "*Backpay* for class members who have been *employed by* the Alabama Department of Transportation (formerly the Alabama Highway Department) will be determined by *a multiple regression formula.*" The report therefore expressly indicates that the *multiple regression formula,* or eligibility formula, will be used to determine *backpay* for all *employee* class members.

(3) The August 28 report then continues that the *multiple regression formula* will be constructed with "Class members ... categorized into cohort groups within line

42. Doc. no. 1467.

43. Doc. no. 1465.

44. *Id.*

45. Doc. no. 1464.

46. *Id.*

47. *Id.*

48. Doc. no. 1471.

49. *Id.*

50. Doc. no. 1475.

51. Doc. no. 1054.

52. Doc. no. 1319.

of progression or job families in which they *worked or applied.*"

(4) Because the formula was developed to determine *backpay,* and because the formula applies to all *employee* class members, and because the formula is constructed based on lines of progression in which these employee class members *worked or applied,* it follows logically and simplistically that the formula includes within its reach *backpay* for *employee* class members who *worked or applied* in a line of progression.

█ The defendants' efforts to refute this simple and obvious reading do not wash. First, the defendants attempt to draw a distinction between employees and applicants, arguing that the formula's opening reference to "class members employed by the Alabama Department of Transportation" does not include "applicants." The defendants state that the "'or applied' language ... has no application to the current formula, which considers only the claims of employees."[53] However, this argument overlooks, as aptly put by the plaintiffs, that employees can be applicants too. These two categories are not mutually exclusive; employee applicants are a subcategory of employees. Because the plaintiff class consists of employee applicants as well non-employee applicants, the formula's opening reference to employees of the Transportation Department means that the formula applies to employees and, *implicitly,* to the subcategory of employee applicants as well. But the failure of the defendants' argument does not stop here: it overlooks the formula's *expressed* language as well. The formula expressly states that "Class members will be categorized into cohort groups within line of progression or job families in which they worked *or applied.*" The formula therefore expressly applies to applicants. This language would be superfluous if the formula did not apply to employee applicants. A cardinal rule of contractual construction is that, "Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous." Restatement (Second) of Contracts § 203(a) cmt. b (1979). *See also Muniz v. United States,* 972 F.2d

1304, 1320 (Fed.Cir.1992) ("A cardinal rule of contract interpretation requires that an interpretation which gives meaning to all parts of a contract will be preferred to one which leaves a portion of it useless, inoperative, meaningless or superfluous."); *cf. Mertens v. Hewitt Associates,* 508 U.S. 248, 258, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993) ("We will not read the statute to render the modifier superfluous."); *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("courts should disfavor interpretations of statutes that render language superfluous."); *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132, 109 L.Ed.2d 588 (1990) (expressing "deep reluctance" to interpret statutory provisions "so as to render superfluous other provisions in the same enactment") (citation omitted).

█ The defendants further argue that footnote one in the formula—that "The parties have not yet agreed as to whether other remedial issues can be resolved through the agreed-upon formula, but are continuing to discuss this issue"—supports their position. They maintain that the footnote reserves two issues for later resolution: the issue of backpay for "applicants" and the issue of instatement for all class members. Again, the defendants stretch logic far beyond its limits. As stated, the formula first provides that "*Backpay* for *class members* who have been *employed* by the Alabama Department of Transportation[1] ... will be determined by a multiple regression formula constructed as follows." The footnote comes *after* the report's broad-and-unqualified opening statement that the formula provides for the determination of backpay for employee class members. The footnote therefore could not have narrowed the class of employees covered by the formula; instead, it reserved for further resolution all other issues, that is, issues *other than backpay for all employees, such as backpay for nonemployees.* This conclusion is reinforced again by the fact that, if the footnote were read as broadly as the defendants suggest, the "or applied" language would be superfluous. This conclusion

**53.** Doc. no. 1054 at 5.

is further girded by the fact that the "or applied" language comes *after* the footnote and thus must have a significance beyond and outside the footnote.

The circumstances following the submission of the August 28 report also lead to this conclusion. First, in their September 11 joint submission of issues to be resolved by the court, the parties listed the following issue: "Should the multiple regression formula be extended to the *non-employee* class members and, if so, what modifications may be necessary to do so? If not, what method of determining remedies should be adopted under Article Twenty of Consent Decree for non-employee class members?"[54] Surely, if the parties had intended the "or applied" issue to have been left for later resolution by them or the court, they would have said so, just as they did in their September 11 joint report with regard to the application of the formula to non-employees.[55] Second, in his statements in open court, the defendants' own expert referred to the "or applied" language as if it were operative under the eligibility formula.[56] Third, neither defendants' counsel nor their experts objected to continual references by the court at hearings and by plaintiffs' counsel in their briefs to the "or applied" language as if it were fully operative under the August 28 report.[57]

To put it simply and directly, if (as the defendants argue) the " 'or applied' language . . . has no application to the current formula, then the critical question is, Why is the language in the formula?"[58] The answer is simple: the language is there because it does have application.

■ The defendants similarly argue that the phrase "line of progression or job families *in which they worked*" language "was never contemplated to include persons who did not hold positions in the line of progression, but who may have performed duties that they would argue fit those positions," and that "No suggestion of this kind was ever made prior to May 30."[59] Again, the defendants' reading would illogically and impermissibly read this language out of the August 28 report. If the parties had never contemplated the application of the language they would not have included it in the formula.

Nevertheless, in its November 7 order, the court declined to apply the eligibility formula to the part of the plaintiff employee class covered by the "worked or applied" language. Why? The defendants observed that, "considering the claims of applicants, in addition to simply comparing their characteristics such as years of service and education with those of others in the group, matters such as the number of vacancies and the relative qualifications of competing applicants for the same position must be considered."[60] "These types of issues," the defendants continued, "apply to the claims of applicants regardless of whether they have been employed by [the Transportation Department] in another line of progression. Only a relatively small number of those applying for non-licensed engineer positions will actually be hired into such a position."[61] Later, the defendants added that "plaintiffs' belated insistence that such persons be included would require virtually scrapping the completed lines of progression and starting over. The presently constituted whites-only formula, made up of white employees within the line of progression, provides no benchmark for these outside applicants. In order to even begin to provide for such an analysis, the parties would be required to spend a great deal of additional time and resources in gathering information to attempt to identify white employees from outside the line of progres-

**54.** Doc. no. 740 at 1–2 (emphasis added).

**55.** *Id.*

**56.** Transcript of hearing held on May 13–15, 1996, at 104–05.

**57.** *Id.* at 51, 53–54, 103–04; plaintiffs' brief filed on May 8, 1996 (Doc. no. 1012), at 25; plaintiffs' brief filed on May 20, 1996 (Doc. no. 1029), at 17.

**58.** Doc. no. 1054 at 5.

**59.** *Id.* at 6.

**60.** *Id.* at 5.

**61.** *Id.*

sion who applied for jobs within the line, their rates of success, and their progress."[62] With regard to the "in which they worked" language, the defendants stated that their "records would not reveal who should be included in this group."[63]

Confronted with this argument, the court was, and is still, presented with a number of concerns. First, the court is confronted with the question of whether the formula could, as a simple practical matter, be applied to class members who worked or applied in a progression line but were not classified in it. No evidentiary record had been developed on this important issue, and the court itself lacks the expertise to resolve the issue on its own. Second, even if the formula could be applied to this group, it appears that a number of other related and important issues would have to be put to the court for resolution as well. For example, there is the problem of how to adjust for those instances in which employee class members might be entitled to recover in two lines of progression under the "worked or applied" language. Third, if the formula could be applied to the group, the application could call for a significant delay in the determination of backpay for the entire plaintiff class while that issue and other resulting related issues were resolved by the court.

The court is, in some measure, also presented with a predicament similar to an earlier one: that of whether the "amount-of-backpay formula" in the August 28 report contained an error in that it added the race coefficient—$1,000—rather than subtracted it, with the result that a class member would have his or her backpay compensated for twice.[64] There, the court modified that formula at the defendants' behest—but it did so only after the parties had developed an adequate evidentiary record.[65] The court has no such record for this issue.

With these thoughts and concerns in mind, the court entered the November 7 order. The court simply could not confidently conclude, on the current record, that the eligibility formula should be applied to employees who worked or applied, but were not classified, in a progression line. Nevertheless, as the parties must recognize, the November 7 order cannot be the end of this issue. Procedures must still be fashioned for the determination of backpay for the members of the plaintiff employee class excluded, as a result of the November 7 order, from recovering backpay as a member of a cohort within a line of progression but who might otherwise be entitled to recover backpay because they "worked or applied" within the line of progression. Because the court entered the November 7 order due to lack of information—that is, an inadequate evidentiary record—it follows that the first step to take should be to make a further evidentiary inquiry into whether, in fact, the formula can be appropriately applied to the excluded group. If the formula works, then it makes no sense to look elsewhere.

The court will, therefore, require that Court–Appointed Expert Ben Fine submit to the court his opinion, in the form of a report or recommendation, as to the following: first, whether the eligibility formula can, as a practical matter, be applied to employee class members who worked or applied, but were not classified, in a progression line; and, second, if the formula can be so applied, how it should be applied in light of the concerns raised by the defendants and the court. Mr. Fine should make his submission after having conferred with the experts for the parties.

Of course, if the court should ultimately conclude that the formula should not be applied to this group, the parties must still come up with procedures for addressing backpay for these class members. So as to expedite the resolution of this litigation, the court will require that, pending the report and recommendation from Mr. Fine, the parties shall proceed now to come up with new procedures, and the court may even require

**62.** Doc. no. 1292.

**63.** *Id.* at 6.

**64.** 926 F.Supp. 1077 (M.D.Ala.1996); Doc. no. 896.

**65.** *Id.*

that the procedures be put in effect immediately.

### III.

In conclusion, the court entered the November 7 order with great reluctance. Once already, the Transportation Department argued to this court, and successfully, that the August 28 report did not say what it said, and the court literally *rewrote* the language in the amount-of-backpay formula to meet the department's demand. Now, once again, the department is arguing that the eligibility formula does not say what it says. The department is essentially asking the court to take out a pencil and erase the "worked or applied" language out of the formula, as if the language had never existed. At the September 14–15 hearing, Ms. Borden, who represents the department, complained that plaintiffs' counsel "apparently wishes for the concepts set forth in [August 28] agreement should be rigidly construed against the Department in all circumstances, but to remain flexible as to things that the Plaintiffs desire to do." [66] The court has a growing concern that Ms. Borden has put the shoe on the wrong foot, and that it is defense counsel who are repeatedly begging for the application of such an unfair and double standard. Indeed, this concern leads the court to note the following.

The court understands that plaintiffs' counsel contend that, under consent decree I, there is no right of appeal from the orders of the court under the consent decree and the August 28 report. But should it turn out that there is such a right, the court strongly urges the plaintiffs to pursue appellate review—either as a conditional direct appeal or a conditional cross appeal—of the court's rewriting of the amount-of-backpay formula and the court's reluctance to enforce the eligibility formula as written. In both instances, the court refused the immediate and full enforcement of express language in the August 28 report. In both instances, the court addressed matters that were not expressly reserved in the September 11 joint report for resolution by the court. And in both instances, a substantial part of the plaintiff class's entitlement to relief was at issue; in other words, the court cut back significantly on that possible entitlement. If the court has erred and overreached in its actions, these two instances present close questions of that possibility.

Accordingly, it is ORDERED as follows:

(1) The order of November 7, 1996 (Doc. no. 1319), holding that class members who "worked or applied" in the non-licensed engineer line of progression, but were never classified in that line, should not be included in the non-licensed engineers' cohort group for purposes of the backpay eligibility formula, is reaffirmed, but is subject to the conditions contained in the paragraphs that follow.

(2) On or before February 28, 1997, Court–Appointed Expert Ben Fine (after conferring with the experts for the parties) shall submit to the court his opinion, in the form of a report or recommendation, as to the following: first, whether the eligibility formula can, as a practical matter, be applied to employee class members who worked or applied, but were not classified, in a progression line; and, second, if the formula can be applied to the group excluded from a cohort as a result of the November 7 order, how it should be applied, in light of the concerns raised by the defendants and the court.

(3) On or before February 14, 1997, the parties are to submit to the court their joint report for addressing backpay, by means other than the eligibility formula, for the group of plaintiff class employees excluded, as a result of the November 7 order, from recovering backpay as a member of a cohort within a line of progression but who might otherwise be entitled to recover backpay because they "worked or applied" within the line of progression.

---

66. Transcript of hearing held on September 14–    15, 1996, at 276.